CITY OF MEDFORD vs. THOMAS F. QUINN, individually
and as executor, & others.[1]

Middlesex.   December 8, 1966. — February 9, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Old Age Assistance.   Lien,* For old age assistance.   *Real Property,* Lien.
*Executor and Administrator,* Real estate of decedent.   *Equity Jurisdic-
tion,* Laches, Lien.

A suit in equity to enforce a lien on real estate for old age assistance
    under ·G. L. c. 118A, § 4, is not barred by lapse of time after the
    recipient's death unless and until undue hardship results therefrom;
    and the initial determination of undue hardship is an administrative
    matter for the Department of Public Welfare.   [44–45]
It could not be said as matter of law that the Department of Public Wel-
    fare erred in determining that no undue hardship would result from
    permitting a municipality to enforce a lien on real estate for old age
    assistance by a suit in equity commenced nearly three years after the
    death of the recipient where it appeared that, although the persons
    interested in the real estate had been inconvenienced, they had at all
    times known that the municipality intended to enforce the lien and had
    not changed their position on an assumption that it would not be
    enforced.   [45–46]
In a suit in equity by a municipality to enforce a lien on real estate under
    G. L. c. 118A, § 4, for old age assistance furnished in the amount of
    $11,600 from 1952 to the recipient's death, where it appeared that the
    property at her death was subject to a bond and mortgage in the sum
    of $1,600 given by her in 1939 under § 4 in its earlier form, the value
    of her interest in the property at her death was to be fixed at $9,000,
    which was the then appraised value of $10,600 less the $1,600, and
    from the $9,000 must be subtracted the statutory exemption of $1,500,
    so that the amount of the charge on the property under the lien was
    $7,500.   [46]

BILL IN EQUITY filed in the ·Superior Court on Decem-
ber 24, 1962.

The suit was heard by *Kalus,* J.

*Daniel F. Riley,* Assistant City Solicitor, for the plaintiff,
submitted a brief.

*Thomas F. Quinn* for the defendants.

[1] Ralph E. Brooks, sole heir at law of the testatrix Catherine M. Brooks, and
Beverly A. Brooks Carpenter, devisee of the real estate under the will of the
testatrix, her grandmother.

KIRK, J.   The city brought this bill under G. L. c. 118A, § 4, to enforce a lien on real estate in Medford.   The parties appear to proceed on the assumption that, as required by G. L. c. 118A, § 4, the Department of Public Welfare (the department) has given its approval in writing to the bringing of the bill, and that the bill was brought within the time authorized by the department.   The case is before us on the city's appeal from a decree of the Superior Court.   The case was heard on a statement of agreed facts.   The defendants did not appeal.

The agreed facts are: The testatrix, a widow, resided in her home at 26 Foss Street, Medford, until her death on February 7, 1960, having then received old age assistance in the amount of $11,600 since January 1, 1952.   A lien on the Foss Street property, dated February 1, 1952, was duly recorded under G. L. c. 118A, § 4 (as amended through St. 1951, c. 801, § 4), on February 11, 1952.   The property, in run-down condition at the time of the testatrix's death, was devised to her granddaughter.

On April 14, 1960, the director of public assistance (the director), in accordance with the policy of the State and local departments of public welfare, submitted to the defendants three appraisals of the property, averaging $10,600. The executor on April 22, 1960, obtained from the Probate Court a license to sell the property for $10,600.   In the meantime a purchase and sale agreement had been signed by the executor and a third party.   This agreement was cancelled when the director refused to give the executor a statement that the city would dissolve the lien for $9,100 (representing the difference between $10,600 and the $1,500 exemption under G. L. c. 118A, § 4).   The refusal was based on the assertion, later withdrawn, that the testatrix also had an interest in a parcel of vacant land.   On August 5, 1960, the director notified the executor that $9,800 would be required to discharge the lien.

On September 20, 1961, the director wrote the executor that $9,100 would be accepted in full discharge of the lien. The devisee, relying upon this communication, applied to a

bank for a loan which would enable her to discharge the lien and also to continue to make improvements which were already in progress on the property. The bank's examination of the title disclosed an encumbrance in the form of a mortgage and bond in the sum of $1,600 executed by the testatrix in 1939 under the provisions of the then existing old age assistance act. Upon demand by the director for a sum to discharge both encumbrances, the defendants, on December 11, 1961, refused to pay more than $9,100. The bill to enforce the lien was filed by the director on December 24, 1962.

On the foregoing facts the judge concluded that the bill to enforce the lien was not brought within a reasonable time. The decree ordered that $1,600 be paid forthwith to discharge the mortgage and bond of 1939. The bill was otherwise dismissed.

This appeal squarely raises, for the first time, the issue of when a bill to enforce a lien under G. L. c. 118A, § 4, must be brought. General Laws c. 118A, § 4, reads in pertinent part: "It shall be the duty of the board of public welfare of the town to take action upon the death of the recipient . . . to enforce any such lien; but such action shall be taken only with the written approval of the department, which shall be granted together with an order of the department that such action be commenced within a specified period of time, *unless, in the opinion of the department, such enforcement will cause undue hardship* . . . [emphasis supplied]. If the board of public welfare neglects or refuses promptly to refer the matter to the department for its approval, or to commence action within the period specified by the department, the department shall thereupon bring such action in the name of such board, and shall withhold from the town any reimbursement which it would otherwise be entitled to receive."

The statute, by its terms, does not state the time within which a bill must be brought to establish a lien. In addition, we have held that the statute of limitations provisions of G. L. c. 118A, § 4A, authorizing actions of contract to

recover old age assistance payments, may not be read into § 4. *Haverhill* v. *Porter,* 333 Mass. 594. In the *Haverhill* case, and in *Martin* v. *Waltham,* 346 Mass. 65, this court held that a lien under § 4 *may* be enforced within a "reasonable time."[2] The judge in the present case interpreted these cases to mean that the lien *must* be enforced within a "reasonable time" or the right is lost. We think that this construction does not achieve the legislative purpose. Our reading of the statute leads us to conclude that the Legislature intended the right to enforce a lien under § 4 to be limited only by a showing of undue hardship, and that the initial determination of the undue hardship was to be an administrative decision to be made by the department.

The purpose of old age assistance legislation is to provide for the immediate needs of the recipient with the expectation that the town will be later reimbursed from the property of the recipient at a time when hardship will be avoided. *Osborne* v. *Lancaster,* 345 Mass. 164, 165. The statute does not reveal any legislative intent to provide benefits to the heirs or devisees of the recipient. The normal rule therefore applies that a town is not barred by laches in enforcing its lien. *Tisbury* v. *Hutchinson,* 338 Mass. 514, 516.

Our inquiry, then, is limited to whether the department erred in finding that no undue hardship would result from permitting the town to enforce the lien. Although the statement of agreed facts shows that the defendants have been inconvenienced, we cannot say as matter of law that the department erred in finding that enforcement of the

---

[2] In the *Haverhill* case, brought under G. L. c. 197, § 10, there was no dispute among the parties that the lien was enforceable. The city, however, had not specifically sought to have the lien enforced in the proceeding. The court nevertheless granted that relief. No question of "undue hardship" was raised, and the comment that the lien was being enforced within a "reasonable time" appears intended to determine, for the purposes of the case, the issue of the statute of limitations.

The *Martin* case was a bill to remove a cloud on title. The court was not asked to decide how long the city had to enforce its lien. There having been no evidence of "undue hardship," the court held and was asked only to hold that, as of the date of the bill, the city had a right to enforce the lien with the result that the cloud on the title to property remained.

lien would not produce undue hardship. The defendants have at all times been aware that the property was charged with a lien and that the city intended to enforce the lien to the full extent of the charge. The defendants do not appear to have made any change in their position on the assumption that the lien would not be enforced.

While we uphold the city's right to enforce the lien, we do not agree with the city's method of computing the charge to which the property is subject. The extent of the charge must be made against the value of the recipient's interest in the property at the time of her death. G. L. c. 118A, § 4. That the property had been improved after the death of the testatrix is immaterial. The property was appraised at $10,600. Although expenses incurred after death may not be deducted in computing the value of the lien, *Tisbury* v. *Hutchinson,* 338 Mass. 514, 516, the 1939 mortgage was a charge on the property before the recipient's death and may be deducted. The value of the recipient's interest in the property at the date of her death was $10,600 less the $1,600 mortgage, or $9,000. From this amount the statutory exemption of $1,500 must be deducted. G. L. c. 118A, § 4. The charge on the property secured by the lien is therefore $7,500.

The final decree must be reversed. A new decree is to be entered providing that the real estate of Catherine M. Brooks at 26 Foss Street, Medford, is subject to a mortgage and bond recorded in 1939 in the sum of $1,600, and, in addition, that the real estate is subject to a charge of $7,500 under the lien recorded in Middlesex South District registry of deeds in book 7862, page 508, and that, if necessary to discharge the indebtedness, the real estate is to be sold and so much of the proceeds as does not exceed $9,100 is to be apportioned as provided in G. L. c. 118A, § 4, and that the excess, if any, is to be paid to the person by law entitled thereto.

*So ordered.*